[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an application by the defendant Lee Urbanetti for a temporary restraining order pursuant to Section 46b-15 of the Connecticut General Statutes against his former wife, the plaintiff, Susan Urbanetti, now known as Susan Czajka, in behalf of the minor children of the parties. The parties were divorced on October 15, 1996. In the divorce, pursuant to a written stipulation dated May 21, 1996, and incorporated into the judgment, the parties were granted joint custody with primary residential custody in the husband subject to parenting opportunities in the wife every Wednesday and on alternate weekends. There are three children, Matthew, who was born July 27, 1983, Kaitlyn, who was born September 24, 1985, and Kelsey, who was born August 9, 1988. CT Page 2534
Upon receipt of the application for temporary restraining order and accompanying affidavit, the court (Moore. J.) granted an ex parte order on February 5, 1999, restraining the plaintiff from entering the children's home or from having any contact with them, and granting sole legal custody to the defendant. At the time of the hearing on an application for temporary restraining order under the statute, the court is charged with making "such orders as it deems appropriate for the protection of the applicant and such dependent children . . . as the court sees fit," including temporary orders for custody and visitation. Connecticut General Statutes, Section 46b-15(b).
Over three partial days of trial, the court heard testimony from both parties and a friend of the plaintiff, as well as from four professionals who had been in varying degrees involved in the lives of some or all of the children since the time of the divorce. In addition, documentary evidence was admitted. The court observed the demeanor of the witnesses and parties and evaluated their credibility. Based upon the evidence, the court makes the following findings of fact.
It is in the best interests of all three children to have a positive and mutually respectful relationship with both of their parents, but the relationship with their mother needs to be refocused to ensure that it makes provision for the safety and security of the children. It is in the best interests of the children that the parents learn to deal more appropriately with each other concerning issues related to the children and to visitation.
Kaitlyn and Kelsey have had regular visitation with their mother according to the judgment's schedule since the time of the dissolution. At times they have visited her on days other than those specified, and at times they have missed Wednesday night visitation because Kaitlyn's activity or homework schedule made it difficult for her to spend the night at her mother's home and the plaintiff opted not to have Kelsey alone. Although that visitation has for the most part been unremarkable, in recent months there have been times when the atmosphere in the plaintiff's home became chaotic and threatening to the children. One such occasion was on January 30, 1999, when both girls were spending the weekend. Ms. Czajka was drinking wine throughout the evening, and her behavior became erratic and out of control. After Kelsey had gone to sleep, Kaitlyn and her mother argued CT Page 2535 about a telephone call Kaitlyn had made. Ms. Czajka struck the child three times on the ear, and then kept her up until well after midnight. As a result of the assault and the erratic behavior on her mother's part, Kaitlyn became frightened for her safety and her sister's at their mother's house.[1] Because the plaintiff's consumption of alcohol to the point of erratic behavior and her physical assault on Kaitlyn each independently satisfies the statutory requirement that a person seeking relief be subjected to a continuous threat of present physical pain or physical injury, the court finds that the children are entitled to relief under Section 46b-15 of the General Statutes.[2]
Although the January 30, 1999, incident involving Kaitlyn is the only incident justifying relief under Section 46b-15 of the General Statutes, it cannot be viewed in isolation from other events between the plaintiff and the children during the months leading up to it. In November, 1998, the plaintiff told Kaitlyn that if the child did not make a choice to live with her, she would move to Florida. She then bought a one-way plane ticket, making sure that Kaitlyn knew about it, and left. Although she was only gone for a week, she gave up her Thanksgiving visitation. During the Christmas recess, she ignored instructions about Kelsey's care during a bout of pneumonia. At least once since January 1, 1999, she harassed the children with telephone calls and spoke to Matthew in a crude, cruel, and demeaning manner on the telephone while the other children and the defendant were listening. This combination of events justifies the belief held by Kaitlyn and Matthew that their mother is drinking excessively and is unable to control her behavior toward them when she is drinking.[3] In addition, the accumulated behavior of the plaintiff has caused physical and/or psychological damage to some of the children. Kaitlyn has experienced increased disorganization and distraction in school, particularly on Mondays, while Kelsey wonders why her mom doesn't love her enough to take care of her.
The court finds that the plaintiff has used alcohol excessively in the presence of the children and prior to communicating with them by telephone, and that she has a problem with alcohol. The court bases this finding on several subordinate findings. First, it is clear that Ms. Czajka frequently has a wine glass in her hand during visitation. While that in itself is not sufficient to determine whether intoxication has occurred, the girls being unable to tell how often it gets emptied and refilled, it is sufficient to determine that alcohol is used as a CT Page 2536 continual prop by Ms. Czajka, to the detriment of her children. Secondly, on at least one occasion as noted above, her behavior became erratic after an evening with the wine glass, and the behavior on the part of the plaintiff that Kaitlyn has described to her school social worker is not consistent with one or two drinks. Thirdly, several people including Matthew have received inappropriate telephone calls from Ms. Czajka when she was slurring her words, sometimes later in the evening. Matthew shares Kaitlyn's fear that their mother is drinking excessively.
It was difficult for Ms. Czajka to voluntarily give up residential custody of her children in May, 1996, and it has been difficult for her to have so little authority to make decisions for them. In addition, she has been unable to move past the consuming anger she feels toward the defendant even now, more than two years after the divorce. That anger has resulted in her saving derogatory things about him to the girls or to numerous others in ways the girls could learn about the comments. Part of her feelings toward him results from her feeling that he always "wins" the custody decisions. She is being treated for panic attacks, depression, and anger.[4] She believes that her medical and psychological problems would be diminished by increasing involvement in the lives of her children, and this belief is not without a rational basis. Nevertheless, she has created a self-fulfilling prophecy. She believes herself to be a victim of her ex-husband, shut off from contact from her children by his actions. In fact, she has isolated herself from the children's school and athletic activities and has alienated them by creating a personna who, at the least, appears dependent on alcohol and by engaging in the various behaviors set forth above. The result is that she is cut off from contact with her children in large measure by her own actions.[5]
It is not in the children's interest that they loose contact with their mother Indeed, it may well be that their contact with her will increase in the future, provided that she meets the objectives and complies with the orders set forth herein. They clearly love her, and are entitled to an opportunity to continue to grow in that love. It is clear, however, that Kaitlyn, at least, is seeking a mother, not a friend, and that the parenting relationship she requires must be based upon the plaintiff's increasing the confidence, maturity, and self-control with which she undertakes her parenting responsibilities. It is also essential that the children be protected from those recent behaviors of the plaintiff which have undermined their sense of CT Page 2537 security.[6] However, the court does not find that the children are in danger requiring closely supervised visitation so long as the plaintiff is in compliance with the orders set forth herein.
The intent of the orders the court will make is not to give Ms. Czajka another opportunity to be the mother of the children, although they deserve that from her and she will have the opportunity to accomplish it. The intent of the orders the court will make, rather, is to give the children another opportunity to have their mother be a productive, mature, and loving part of their lives. It is her responsibility and her opportunity to do so.
Based upon the evidence and applicable law, the court enters the following orders, which are found to be in the best interests of the minor children.
1. Ms. Czajka shall not consume or have in her possession any alcoholic beverage, any non-prescription drug, or more than the prescribed dosage of any prescription drug at any time she is in the presence of the minor children, which is defined as being in the same building or automobile as the children whether or not she is visible to them.
2. Ms. Czajka shall not consume any alcoholic beverage, any non-prescription drug, or more than the prescribed dosage of any prescription drug during the twelve hours prior to any visitation with the children, and shall not call the children or receive calls from them at any time she has consumed any alcohol or drugs as described herein.
3. Ms. Czajka is enjoined and restrained from assaulting, harassing, threatening, molesting, attacking, or imposing any restraint upon Matthew Urbanetti, Kaitlyn Urbanetti, and Kelsey Urbanetti in person, by telephone, or by mail or e-mail.
4. Ms. Czajka shall not call the children more than once each day, and such call shall not exceed ten minutes in duration. Nothing in this order shall prevent a child, at the child's option, from calling the plaintiff or the plaintiff from receiving such calls.
5. Mr. Urbanetti shall continue to advise Ms. Czajka by mail or telefax of the children's school and activities schedules as well as of their medical needs. Ms. Czajka shall acknowledge CT Page 2538 receipt of such communications by the same means they were sent. If she fails to acknowledge receipt of any such communication, Mr. Urbanetti shall mail it to her certified mail, return receipt requested, and she shall pay the costs associated with such mailing. Nothing in this order shall prevent Ms. Czajka from contacting the children's schools, activities centers, teachers, counselors, social workers, mental health professionals, or medical doctors to obtain schedules or information, but she shall not interfere in any educational or medical plan without the express written permission of the defendant or an order of the court. Ms. Czajka will continue to have the unimpeded access to the children's activities and schooling that she has enjoyed under the judgment, and is free to attend any such activity so long as she is in compliance with the provisions of this order concerning sobriety and restraint from abuse.
6. Ms. Czajka shall immediately contact Kaitlyn's school social worker to determine how to make contact with an Alateen counselor, and upon receipt of that information shall contact the Alateen counselor to learn about the programs that are offered to teenagers. This order does not require that the plaintiff participate in any such program or in any similar program for adults. It requires that she learn what her daughter is doing with respect to Alateen.
7. Prior to the resumption of visitation as set forth herein, the plaintiff and Kaitlyn shall have a therapeutic visitation with the child's therapist, Dr. Berry, for the purpose of commencing the re-establishment of the parent-child relationship. A similar visit shall be held with Kelsey. These should be conducted as soon as possible consistent with Dr. Berry's schedule.
8. Upon completion of the therapeutic visitation, visitation shall be modified as follows:
 a. Kaitlyn and Kelsey shall have visitation with the plaintiff at her home on Wednesday evenings from 5:00 p. m. until 8:30 p. m. unless a previously scheduled school or athletic activity interferes with such visitation, in which case it will be scheduled to occur on a different evening the same week.
b. Kaitlyn and Kelsey shall have weekend visitation with the plaintiff at her home on Saturdays from 10:00 a.m. CT Page 2539 until 5:30 p. m and on Sundays from 10:00 a.m. until 5:30 p. m. every other week. This won't include overnight visitation. One weekend will be spent by the girls with the plaintiff on Saturday and Sunday, while the next will be spent with the defendant. The plaintiff is free to take the girls out during these visitations either for activities she or they desire or for scheduled athletic activities they might wish to participate in.
 c. There shall be an external supervisor of visitation whose responsibilities will include meeting with each of the girls on a regular basis to monitor how visitation is proceeding, interviewing each parent on a regular basis to monitor their perspectives, and reporting to the court at least monthly. The external supervisor will have the right to make random unannounced visits to the plaintiff's house during visitation, but will not intrude upon that visitation or on the plaintiff's privacy except as may be necessary to accomplish the objectives of these orders.
9. The plaintiff will attend Parenting Effectiveness Training or a similar program to assist her in developing the skills necessary to effectively parent adolescents. This order is not a prerequisite to the commencement of visitation as set forth in Paragraph 8 of this order, but participation in the program is required.
10. No party, attorney, or therapist will share any of the findings of fact in this decision with any of the children nor discuss the content of the trial. However, the attorney for the minor children will meet with the children to advise them as she thinks appropriate of the content of the orders and the intent the court has expressed in making them.
11. The plaintiff will provide the defendant with a written authorization to tape record her telephone calls with the children during the pendency of this order. The defendant will advise the plaintiff if he will do so. However, if the defendant tape records any such conversation, he is not permitted or authorized to listen to the recording, but rather shall turn it over to the children's therapist, Dr. Berry, who will listen to the tape only for the purpose of insuring that the court's orders concerning sobriety and restraining harassment have been complied with. If she finds that they have not, she shall inform the CT Page 2540 parties of that finding, and the parties shall return to court. Dr. Berry will retain custody of any tapes she believes contain inappropriate content by the plaintiff. It is the intent of this order that the children be protected but that the privacy of their telephonic communication with their mother be preserved.
12. Neither party will make derogatory comments about the other. There is no limit on this order. They will not make such comments to or in the presence of the children, or to or in the presence of any person who has the opportunity to repeat them to the children.[7]
13. Steven Polisel is appointed external supervisor. If he is not available to perform this service, the parties shall return to court for a status conference to determine whether another person should be appointed. The court will retain jurisdiction.
14. These orders are in effect for ninety days, subject to extension on motion of either party. See Connecticut General Statutes, Section 46b-15(d).
15. All orders of the court not inconsistent with these orders will remain in effect during the effective period of these orders and after their expiration except as modified by the court.
Orders will enter accordingly.
BY THE COURT,
GRUENDEL, J.